UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEREN WORTHYLAKE,<br><br>            Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | No.  2:24-cv-02114-CKD<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act").  The parties have consented to magistrate judge jurisdiction.  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1972, applied on September 21, 2021 for DIB, alleging disability beginning May 26, 2021, later amended to June 11, 2020.  Administrative Transcript ("AT") 17, 26.  Plaintiff alleged she was unable to work due to severe clinical depression, PTSD, anxiety, suicidal thoughts, sleep disorder, and ADHD.  AT 54.  In a decision dated January 10, 2024, the

////

1

ALJ determined that plaintiff was not disabled.[1] AT 17-28. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.
>
> 2. The claimant has not engaged in substantial gainful activity since June 11, 2020, the alleged onset date.
>
> 3. The claimant has the following severe impairments: diabetes mellitus; lumbar degenerative disc disease; obesity; osteoarthritis of the right knee; depression; attention deficit disorder (ADHD); and post-traumatic stress disorder (PTSD).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except the claimant is further limited to occasional postural activities, except never climbing ladders, ropes or scaffolds; no environmental hazards; nonpublic, simple, repetitive tasks; occasional interaction with coworkers and supervisors; and occasional changes in a routine work setting.
>
> 6. The claimant is unable to perform any past relevant work.
>
> 7. The claimant was born [in 1972] and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advance age.
>
> 8. The claimant has at least a high-school education.
>
> 9. Transferability of job skills is not material to the determination of disability[.]
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, since June 11, 2020, through the date of this decision.

AT 19-28.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred by discounting plaintiff's subjective symptom testimony; and (2) the ALJ failed to explain why certain moderate mental limitations were not included in the residual functional capacity (RFC) assessment.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is

1   responsible for determining credibility, resolving conflicts in medical testimony, and resolving
2   ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).
3   "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one
4   rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

5       The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th
6   Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's
7   conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not
8   affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see
9   also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the
10  administrative findings, or if there is conflicting evidence supporting a finding of either disability
11  or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,
12  1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in
13  weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

14  ANALYSIS

15      A.  Subjective Symptom Testimony

16      Plaintiff claims that the ALJ erred by failing to provide clear and convincing reasons to
17  discount her subjective symptom testimony as to pain and mental symptoms. Plaintiff argues that
18  the ALJ failed to account for her anxiety and depression and the fact that her boyfriend helps her
19  with numerous daily activities.

20      The ALJ summarized plaintiff's testimony as follows:

21-26  > The claimant reports that she is unable to work due to a combination of mental and physical impairments. She reports that she is severely depressed, which makes it difficult to focus and impairs her memory. She reports that she cries frequently and has poor sleep. She feels anxious in public and self-isolates. She reports pain in her back and knees. The claimant reports that she is able to cook simple meals, put laundry away, and take care of her dogs. She is able to drive a car and shop for groceries and necessities. She can lift/carry 15 pounds, stand 10 minutes, and sit 15 minutes. She would be absent most days. She could not focus at work or follow instructions.

27  AT 23-24, citing AT 206-213, 233-241 (adult function reports) and AT 37-49 (hearing
28

testimony).

The ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. AT 24. As to mental impairments, the ALJ noted that medical records showed that plaintiff suffered from depression, ADHD, and PTSD. AT 25.

> However, mental status examinations were generally within normal limits, aside from depressed or anxious mood.[2] The records do not generally indicate that the treating physicians found significant limitations in the claimant's activities of daily living or cognitive or social functioning at her medical appointments. She has not had any psychiatric hospitalizations. She reports that she is able to handle her activities of daily living independently, including cooking, cleaning, and handling her personal care.

AT 25 (some record citations omitted). The ALJ found sufficient evidence to support a mental RFC for simple, routine tasks with limited interactions and changes in routine, but determined that the mental limitations were not so severe as to preclude all work. AT 25.

As to the credibility of plaintiff's physical symptom testimony, the ALJ reasoned:

> [T]he claimant's obesity, degenerative disk disease, osteoarthritis, and diabetes, in combination, warrant a limitation to light work with postural limitations. The claimant's osteoarthritis is mild. Her degenerative disc disease is moderate, but she has made limited complaints and sought minimal treatment for this condition. Her diabetes and weight improved with treatment. The record as a whole does not support a conclusion that the claimant was precluded from working due to physical impairments.

AT 25 (record citations omitted).

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of

---

[2] Citing AT 1275-1902 (treatment records from 2022 and 2023).

5

Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); see also Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. When discounting subjective testimony, an ALJ must provide "specific, clear, and convincing *reasons* for doing so." Wade v. Saul, 850 F. App'x 568, 569 (9th Cir. 2021) (emphasis in original), citing Lambert, 980 F.3d at 1277–78. This standard does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony[.]" Lambert, 980 F.3d at 1277. However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility. Id. at 1277–78.

Here, the ALJ found objective medical evidence of mental and physical impairments. He next considered the nature and extent of medical treatment for these conditions and plaintiff's reported daily activities.

As to mental symptoms, plaintiff argues that she "consistently exhibited abnormal mental findings during examinations, including anxious and depressed [mood]." (ECF No. 10 at 10-11.) However, the ALJ acknowledged that plaintiff's "mental status examinations were generally within normal limits, *aside from depressed or anxious mood*." AT 25 (emphasis added). Plaintiff does not point to evidence contradicting the ALJ's observation that, despite her anxiety and depression, plaintiff's treating physicians did not find her significantly limited in cognitive or

6

social functioning.  See AT 22 (ALJ states that medical records show plaintiff was generally cooperative with medical staff, and had normal concentration and attention at an April 2022 psychological evaluation).  In the April 2022 consultative exam cited by the ALJ, Dr. Natasha Krikorian conducted a mental status exam and found her cooperative and responsive, with normal speech, and "unimpaired" attention, concentration, and calculation.[3]  AT 790.

Plaintiff argues that the ALJ "neglected to mention" that plaintiff has a boyfriend who helps her with several activities of daily living.  In a November 2021 adult function report cited by the ALJ, plaintiff stated that her boyfriend "buys food and [helps with] work, house chores," paying bills, and taking care of plaintiff's minor daughter; he also reminded her to do things.  AT 207-208.  However, in the same report, plaintiff stated that she took care of her daughter, boyfriend, and dogs; cooked dinner two or three days a week; put laundry away; drove a car; and shopped for groceries and clothes.  AT 206-209.  Ample evidence indicates that plaintiff could handle her personal care, as the ALJ noted in his credibility analysis.  See, e.g., AT 790 (Dr. Krikorian noted, based on plaintiff's self-reports, that plaintiff was "independent for basic Activities of Daily Living" including showering and dressing, driving, preparing meals, shopping, and using public transportation).

Because the ALJ used the proper process and provided proper reasons, the Court defers to his credibility determination.

    B.  Residual Functional Capacity

Plaintiff claims that the ALJ did not incorporate certain moderate mental limitations in the RFC, nor did he explicitly reject them, and this was harmful error.

The ALJ found that plaintiff was moderately impaired in the ability to maintain attention and concentration; deal with the stresses of a competitive work environment; understand, remember, and carry out instructions; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself.  AT 21-22.  Plaintiff argues that certain of these limitations

---

[3] The ALJ found this medical opinion partially persuasive, but found plaintiff more mentally limited in some areas than Dr. Krikorian's functional assessment.  AT 21.

"equated to time off task" and that the ALJ failed to address plaintiff's need for time off-task or incorporate it into the RFC. Plaintiff argues that this error was harmful, as the VE testified that, if a person were off-task for two hours of an eight-hour day or absent more than two days a month, he or she would not be able to maintain employment. See AT 50-51.

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4).

Here, the ALJ's assessed mental RFC limited plaintiff to "nonpublic, simple, repetitive tasks; occasional interaction with coworkers and supervisors; and occasional changes in a routine work setting." AT 23. Notably, the ALJ did not adopt any opined limitations on plaintiff's ability to maintain regular attendance. The ALJ found the opinions of two State agency consultants persuasive, both of whom found plaintiff to have mild to moderate mental limitations. AT 26. He found Dr. Krikorian's opinion "partially persuasive" and did not comment on her opined "mild to moderate impairment" in plaintiff's "ability to complete a normal workday or workweek without interruptions resulting from a psychiatric condition." AT 21; see AT 794.

In fact, the ALJ rejected the opinion of Dr. Miles Driscoll, who opined that plaintiff could not "complete a normal workday/week without interruptions from psychologically-based symptom[s]" and would be absent more than four days per month. AT 25; see AT 1269-1270. The ALJ determined that the record did not "support such restrictive limitations as described by Dr. Driscoll." AT 26.

Given that the ALJ did not find Dr. Driscoll's opined severe limitations to be warranted, it

is not clear why plaintiff believes the ALJ was required to incorporate these or similar limitations concerning attendance and/or time off-task in to the RFC. Rather, the ALJ incorporated multiple moderate mental limitations which he found persuasive and/or supported by the evidence. "In general, the Ninth Circuit has determined limitations to 'simple' work sufficiently addresses 'moderate' mental limitations." Garcia v. Comm'r, No. 1:21-cv-01799-SAB, 2023 WL 4162766, *14 (E.D. Cal. June 22, 2023) (collecting cases). Plaintiff has not shown error on this basis.

Plaintiff also argues that the ALJ erred by failing to account for medication side effects in the RFC. At the August 2023 hearing, plaintiff testified that she was taking more than five medications for mental health. AT 45. The ALJ asked if she was experiencing significant side effects, and plaintiff mentioned constipation and that she felt "a little bit numb." AT 45. In a May 2022 disability report, plaintiff indicated she was taking seven medications, with side effects including dizziness, drowsiness, nausea, insomnia, and headaches. AT 230. Plaintiff argues that these self-reports should be taken at face value and incorporated into the RFC; however, the ALJ found plaintiff's self-reported symptoms to be not fully supported by the medical evidence. The ALJ's credibility finding is entitled to deference, as set forth above, and plaintiff has not shown she is more limited than the moderate limitations reflected in the RFC.

The Court concludes that the assessed RFC was adequately explained and grounded in substantial evidence.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 10) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 14) is granted; and

3. Judgment is entered for the Commissioner.

Dated: September 22, 2025

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/wort2114.dib.ckd